ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>AMERIFIRST FUNDING, INC. aka<br>AMERI-FIRST FUNDING, INC. aka<br>AMERI FIRST FUNDING, INC.,<br>AMERIFIRST ACCEPTANCE CORP.,<br>JEFFREY C. BRUTEYN,<br>DENNIS W. BOWDEN,<br><br>Defendants,<br><br>and,<br><br>AMERICAN EAGLE ACCEPTANCE CORP.,<br>HESS FINANCIAL CORP.,<br><br>Relief Defendants. | COMPLAINT<br>Civil Action No.<br><br>3-07CV1188-D<br><br><br>U.S. DISTRICT COURT<br>NORTHERN DISTRICT OF TEXAS<br>FILED<br>JUL - 2 2007<br>CLERK, U.S. DISTRICT COURT<br>By _____ NB _____<br>Deputy |

Plaintiff Securities and Exchange Commission alleges the following:

**SUMMARY**

1.    The Defendants in this case are operating an investment fraud through which they have raised at least $35 million. Attracting investors with false promises of safety, the Defendants have used much of their victims' money for their personal benefit, acquiring houses, commercial real estate, an airplane and automobiles, among other things.

2.    Selling securities that they call "Secured Debt Obligations" ("SDOs"), the Defendants lie to their mostly elderly victims, falsely telling them that their funds will be conservatively invested and the securities they are being sold are safe, insured by several layers of coverage and guaranteed by a commercial bank.

3. Moreover, the Defendants hide from investors the fact that Bruteyn, AmeriFirst's Managing Director, has a long record of financial irresponsibility and securities-related violations, including bankruptcies and regulatory actions.

4. Based on the use of investor funds, AmeriFirst, like Bruteyn's past business ventures, is likely headed toward a financial collapse. In the absence of emergency relief by the United States District Court, investors, many elderly, will suffer significant losses.

5. By engaging in the conduct detailed in this Complaint, Defendants, directly or indirectly, singly or in concert, have engaged in, and unless enjoined will continue to engage in transactions, acts, practices and courses of business that constitute violations of Sections 5(a), 5(c) and17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c) and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and of Rule 10b-5 [17 C.F.R. § 240.10b-5], promulgated thereunder.

## JURISDICTION AND VENUE

6. The investments offered and sold by the Defendants are "securities" under Section 2(1) of the Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c].

7. The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], to preliminarily and permanently enjoin Defendants from future violations of the federal securities laws.

8. This Court has jurisdiction over this action, and venue is proper, pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa].

9. Defendants, directly or indirectly, made use of the means or instruments of

transportation and communication, and the means or instrumentalities of interstate commerce, or of the mails, in connection with the transactions, acts, practices and courses of business alleged herein. Certain of the transactions, acts, practices and courses of business alleged herein took place in the Northern District of Texas.

## DEFENDANTS

10. **Jeffrey C. Bruteyn** ("Bruteyn"), age 37, of Dallas, Texas, is Managing Director of Amerifirst Funding, Inc. and Amerifirst Acceptance Corporation and the Director and sole owner of Hess Financial Corporation. Bruteyn was an associated person of broker-dealers from approximately 1994 until January 2002, when the NASD suspended him from associating with any NASD member for 18 months and fined him $15,000 for executing unauthorized trades, failing to follow customer instructions and making misrepresentations. In March 2002, the NASD ordered him to pay an arbitration award of $287,000 to a former client for breaching his fiduciary duties, churning the customer's account, making misrepresentations and omitting information, negligence in handling the account and unauthorized trading. Further, in August 2003, the NASD permanently barred Bruteyn from associating with any NASD member, as punishment for his failure to respond to the NASD's requests for documents and information. Bruteyn was also the CEO of American Securities Corp., an NASD member broker-dealer whose registration was cancelled while under suspension for failing to respond to a request for financial information and failing to pay a fee. In addition, Bruteyn filed "no-asset" Chapter 7 personal bankruptcies in 1996 and 2003.

11. **Dennis W. Bowden** ("Bowden"), age 55, of Dallas, Texas, is the president of Amerifirst Funding, Inc., a director and chief operating officer of Amerifirst Acceptance Corporation and president and COO of American Eagle Acceptance Corporation.

12.     **Amerifirst Funding, Inc.** ("AFI"), is a Texas corporation operated and controlled by Bruteyn and Bowden. It is in the business of offering "Secured Debt Obligations" and has issued these securities without a registration statement being filed with the Commission. AFI has never registered a securities offering under the Securities Act and has not registered any class of securities under the Exchange Act.

13.     **Amerifirst Acceptance Corporation** ("AAC"), is a Texas corporation incorporated in February 2006 and controlled by Bruteyn and Bowden. It is in the business of offering "Collateral Secured Notes" ("CSNs") and is an issuer of these securities. The CSNs are essentially identical to the SDOs, but are only marketed directly by AmeriFirst. Throughout this Complaint, both securities will be referred to as "SDOs." The CSNs have not been registered under the Securities Act or Exchange Act, nor are they registered with any state. AAC has never registered a securities offering under the Securities Act and has not registered any class of securities under the Exchange Act.

## RELIEF DEFENDANTS

14.     **American Eagle Acceptance Corporation** ("American Eagle"), is a Texas corporation controlled by Bowden and held out to be a subsidiary of AFI. American Eagle holds at least three Motor Dealer Finance Licenses issued by the State of Texas, and is the maker of notes for car loans funded by Amerifirst.

15.     **Hess Financial Corporation** ("Hess"), is a Texas corporation controlled by Bruteyn. Hess has received millions of dollars in "consulting fees" from AmeriFirst and other related entities. Bruteyn used some of these funds to pay "referral fees" to AmeriFirst sales agents. In addition, Hess has used millions of dollars of these investor funds to purchase real estate in the Dallas area and elsewhere.

## **THE FRAUDULENT SCHEME**

### **The AmeriFirst SDO Offering in General**

16.  Since at least January 2006, Bruteyn and Bowden, through AFI and AAC (collectively "AmeriFirst"), have raised at least $35 million, and as much as $55 million, from the sale of SDOs to hundreds of investors located primarily in Texas and Florida. Many of these investors are senior citizens. Both Bruteyn and Bowden control all aspects of AmeriFirst's operations, including disseminating offering documents to sales agents and investors, communicating with sales agents and investors, authorizing banking transactions, maintaining AFI and affiliated company's brokerage accounts, signing the SDO Notes and Servicing Agreements, and obtaining and maintaining insurance.

17.  According to offering materials, AmeriFirst, through its American Eagle subsidiary, specializes in purchasing, factoring and collecting "qualified secured automobile receivables," which are acquired on the open market from "select" car dealerships or generated through auto sales on American Eagle's handful of used car lots. These receivables supposedly secure the SDOs.

18.  AFI markets the SDOs as a higher-yielding, but equally safe, alternative to bank CDs, offering rates from 7% to 8% APR on two and three year terms. While AmeriFirst has an in-house sales agent to process investor paperwork and respond to inquiries from potential investors attracted by AmeriFirst's website, the issuer markets the SDOs in large part through a network of sales agents in Texas and Florida. The entities selected by AmeriFirst as sales agents hold themselves out as firms specializing in providing low-risk investments to the elderly and persons saving for retirement.

19.  The customers who purchase the AmeriFirst investments are often lured to the offices of the sales agents by ads in local newspapers touting the availability of relatively high-

Case 3:07-cv-01188-D   Document 1   Filed 07/02/2007   Page 6 of 18

yielding FDIC-insured certificates of deposit. When conservative prospective investors respond to the advertisements, they instead are pitched SDOs as an attractive alternative, paying a higher rate of interest and supposedly offering safety comparable to an FDIC-insured CD.

20. The investment contract between AmeriFirst and its clients consists primarily of two documents: (1) a document entitled "Collateral Secured Debt Obligation;" and (2) a "Servicing Agreement" (collectively referred to as the "Agreement") Investors send their funds directly to AmeriFirst.

21. AmeriFirst investors may elect to receive monthly interest payments or to compound their earnings by rolling over interest payments into the SDO. Most investors have elected to compound their returns; this has permitted AmeriFirst to make its scheduled monthly payments to the minority of its investors in spite of the misappropriation of investor principal and the low returns obtained on funds actually invested.

22. AmeriFirst claims that it does not pay commissions or fees to its sales agents. However, bank records indicate that AmeriFirst has transferred millions of dollars of investor funds to Hess Financial as "consulting fees" and that Hess Financial has, in turn, paid large amounts to sales agents as "referral fees." These referral fees appear to equal 4% to 5% of the invested funds.

23. AmeriFirst promises investors that they can expect a heightened duty of candor, trust and honesty from the company and its representatives. The Agreement represents that "the relationship between [investor] and [AmeriFirst] will be a relationship of trust in which [AmeriFirst] shall comply with all the obligations of a fiduciary." As set forth below, Defendants actions belie these high-minded and comforting platitudes.

RE: *SEC v. AmeriFirst Funding, Inc., et al.*  
**COMPLAINT**                                                                                   6

### False and Misleanding Statements and Omissions
### In the Offer and Sale of AmeriFirst SDOs

### Safety of the Investment

24. AmeriFirst promotional materials and contracts emphasize repeatedly the complete safety of the SDOs. Offering materials state that the investments are "guaranteed" by a commercial bank. Elsewhere, the materials claim that AFI is a "bank holding company" whose affiliate American Eagle has a "banking license from the State of Texas."

25. Amerifirst further represents that investors are insulated from risk by several layers of insurance coverage. The following statements from AmeriFirst sales literature, correspondence to investors and potential investors from Bruteyn and Bowden and the investment contracts themselves are illustrative of the Defendants' representations:

- "[i]n addition to AmeriFirst's guarantee of your investment, the Fireman's Fund Insurance Group reinsures all of our receivable accounts;"
- AmeriFirst carries "a FRAUD and DISHONESTY BOND with Western Surety Company;"
- AmeriFirst's obligation is "guaranteed by a Commericial Bank and reinsured by two outside AA rated insurance companies. The reinsurance companies are Allianz and Lloyd's of London;"
- "[f]or insured notes (AmeriFirst) agree to keep a fully covered single interest coverage policy on all uninsured receivables at all times by The American National Insurance Company;"
- AmeriFirst's insurance coverage is comparable to FDIC insurance.

26. To accentuate the impact of these representations, AmeriFirst provides investors and potential investors with copies of certificates purporting to verify the coverage by Lloyds, Allianz, Collateral Protection, Fireman's Fund and Western Surety Company. In discussing the

*RE: SEC v. AmeriFirst Funding, Inc., et al.*                                                                                      7
**COMPLAINT**

purported insurance coverage, AmeriFirst investor materials boast that "[d]ue to the security of our Secured Debt Obligation Account, we feel that it is a perfect investment vehicle for someone in a conservative financial position."

27. As the name of the security implies, AmeriFirst also represents that investor accounts will be protected by collateral. The Agreement states that AmeriFirst will "provide mutually agreeable collateral to secure this note within one month of the date of execution of this Note."

28. Finally, AmeriFirst purports to assure the safety of investor funds through its conservative investment policy. AmeriFirst promises that the "funds advanced by investors shall be held either in cash in the investor's separate account, government or corporate AAA bonds, qualified receivables or publicly traded stock, namely IFHC."

29. In fact, AmeriFirst's contention that investor accounts are virtually risk-free is built on a foundation of lies. Contrary to AmeriFirst's claim, there is no evidence that the AmeriFirst SDOs are guaranteed by a commercial bank. American Eagle is not, as represented by AmeriFirst, licensed as a commercial bank. Moreover, no other commercial bank guarantees AmeriFirst's obligations to its investors.

30. AmeriFirst's description of the insurance protecting investors is also false and misleading. AmeriFirst does not carry insurance that guarantees its "receivables or investor accounts". During the relevant period, AmeriFirst has had in effect no insurance coverage from Fireman's Fund or Allianz. AmeriFirst's policy with Lloyds covers only losses relating to the automobiles that collateralize notes written or purchased by American Eagle. The Lloyd's coverage, moreover, is limited to an annual aggregate maximum of $200,000, a fraction of AmeriFirst's obligations to its investors.

31. The "fraud and dishonesty bond" issued by Western Surety covers only fraudulent and dishonest acts committed by an employee against the *company*, such as embezzlement or theft of property. It does not protect investors or their accounts. Moreover, it is limited to $100,000 per employee, with an aggregate maximum coverage limit of $600,000.

32. In addition, AmeriFirst has not collateralized most of its debt to investors. Only a small portion of investor funds has been placed in instruments secured by collateral, specifically automobile loan receivables.

33. Finally, AmeriFirst consistently deviates from its promise to place funds in specified low-risk investments. As set forth more fully below, AmeriFirst has used millions of dollars collected from clients to purchase low-grade and speculative investments.

### Misuse and Misappropriation of Investor Funds

34. AmeriFirst has not used investor funds for the purposes represented to investors. The Defendants have stolen millions of dollars and risked millions more in unauthorized investment vehicles.

35. Contrary to their representations to investors, Defendants have not maintained separate accounts on behalf of each of AmeriFirst's investors. AmeriFirst has commingled investor funds in accounts controlled by Bruteyn and Bowden.

36. At least $4.7 million of investor funds have been transferred from AmeriFirst to Hess Financial's accounts and another $2.49 million of investor funds have been directly deposited in the Hess account; Bruteyn effectively treats Hess accounts as his personal checking account. Among the personal payments Bruteyn has made through this account are: $1.98 million to purchase real estate through a Florida broker; $200,000 to invest in other real property; $160,000 in credit card payments; $109,000 for a divorce settlement and child support; $100,000 as a partial payment on an Aston Martin automobile; $35,000 for flooring at

"Tile Land," a $30,000 payment for an airplane (Bowden is a pilot); and various amounts totaling more than $750,000 for other personal expenses such as country club dues, interior decorating services (provided by Bowden's wife), landscaping services, utilities, travel and cash withdrawals.  Bowden also received over $850,000 from Hess to purchase and remodel a Dallas home.

37.     Defendants have spent $1.4 million on commercial real estate to expand their chain of used car dealerships.  They have spent approximately $2.3 million to fund business operations, including expenditures to purchase the inventory of automobiles for the used car lots.

38.     AmeriFirst has placed only a fraction of funds collected from investors in secure, collateralized investments.  Instead, Defendants have placed millions of dollars in such risky investments as junk-rated corporate bonds, put and call options, common stocks in volatile industries, such as the technology sector, and floating rate funds.

### Misrepesentations and Omissions Concerning the Background Of AmeriFirst and Its Principals

39.     AmeriFirst sales literature and correspondence describes the background of the company and its principals in solely positive, if not laudatory, terms.  Defendants represent that AmeriFirst and its present management have been "in business for 15 years without one complaint or late payment."

40.     AmeriFirst boasts that Bruteyn, its managing director, is a "CRCP (Certified Regulatory and Compliance Professional) from the Wharton School of Business." AmeriFirst describes Bruteyn as holding "Series 7, 24 and 63 securities licenses" from the NASD and further touts his experience as director of an investment banking department, where "[i]n addition to market making and brokerage activities, Mr. Bruteyn specialized in compliance issues pertaining to these activities."

RE:  SEC v. AmeriFirst Funding, Inc., et al.                                                                   10
**COMPLAINT**

41.     Defendants fail to disclose to investors Bruteyn's history of financial irresponsibility and his record of securities-related sanctions. Within the past decade, once in 1998 and again in 2005, Bruteyn discharged his personal debts through a Chapter 7 Bankruptcy. Bruteyn has been sanctioned by the NASD for numerous improprieties and, in August 2003, was finally barred from association with any NASD member. As a consequence, contrary to AmeriFirst's claim, Bruteyn no longer holds any NASD securities licenses. Bruteyn was also CEO of AmeriFirst Securities Corp., a broker-dealer which withdrew its registrations with the SEC and NASD in 2001 while it was under NASD suspension for failing to respond to a request for financial information by the NASD and for failing to pay a fee.

## ONGOING ACTIVITIES AND FUTURE PROSPECTS

42.     Defendants' offer and sale of the AmeriFirst SDOs is ongoing. AmeriFirst continues to promote the program, collect investor funds and pay commissions to its sales agents.

43.     As a consequence of Defendants' pattern of misappropriating principal and placing client funds in investments that provide insubstantial returns, AmeriFirst investors are likely to suffer significant losses. A large proportion of AmeriFirst clients have elected to let their returns compound, rather than receiving interest payments on a monthly basis. AmeriFirst has managed to make interest payments to the other investors; it is not, however, preserving sufficient principal and earning sufficient income to meet its obligations to compounding investors when their AmeriFirst SDOs mature.

44.     Twice in the past decade, Bruteyn has had to resort to the bankruptcy court as a consequence of his propensity to incur financial obligations that he is not prepared to fulfill. In the absence of emergency relief, these Defendants will likely, in the near future, repeat this pattern of irresponsibility and AmeriFirst investors will suffer great financial distress and

hardship. The relief requested by the Commission will circumscribe the damage to present investors, prevent others from falling prey to AmeriFirst's false and misleading claims, and enhance the ability of the Commission to provide victims with monetary relief.

### FIRST CLAIM
### Violations of Section 17(a) of the Securities Act

[As to All Defendants]

45. Plaintiff Commission repeats and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth *verbatim*.

46. The Defendants, directly or indirectly, singly or in concert with others, in connection with the offer or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have:  (a) employed devices, schemes and artifices to defraud;  (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

47. As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 44 above.

48. With respect to violations of Sections 17(a)(2) and (3) of the Securities Act, the Defendants were negligent in their actions regarding the representations and omissions alleged

herein.  With respect to violations of Section 17(a)(1) of the Securities Act, the Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

49.  By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5

[As to All Defendants]

50.  Plaintiff Commission repeats and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth *verbatim*.

51.  The Defendants, directly or indirectly, singly or in concert with others, in connection with the purchase or sale of securities, by use of the means and instrumentalities of interstate commerce and by use of the mails have:  (a) employed devices, schemes and artifices to defraud;  (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and  (c) engaged in acts, practices and courses of business which operate as a fraud and deceit upon purchasers, prospective purchasers and other persons.

52.  As a part of and in furtherance of their scheme, the Defendants, directly and indirectly, prepared, disseminated or used contracts, written offering documents, promotional materials, investor and other correspondence, and oral presentations, which contained untrue statements of material facts and misrepresentations of material facts, and which omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, including, but not limited to, those set forth in Paragraphs 1 through 44 above.

*RE:  SEC v. AmeriFirst Funding, Inc., et al.*                                                                                    13
**COMPLAINT**

53. The Defendants made the above-referenced misrepresentations and omissions knowingly or with severe recklessness regarding the truth.

54. By reason of the foregoing, the Defendants violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM
### Violations of Section 5(a) and 5(c) of the Securities Act

[As to All Defendants]

55. Plaintiff Commission repeats and incorporates paragraphs 1 through 44 of this Complaint by reference as if set forth *verbatim*.

56. Defendants, directly or indirectly, singly and in concert with others, have been offering to sell, selling and delivering after sale, certain securities, and have been, directly and indirectly: (a) making use of the means and instruments of transportation and communication in interstate commerce and of the mails to sell securities, through the use of written contracts, offering documents and otherwise; (b) carrying and causing to be carried through the mails and in interstate commerce by the means and instruments of transportation, such securities for the purpose of sale and for delivery after sale; and (c) making use of the means or instruments of transportation and communication in interstate commerce and of the mails to offer to sell such securities.

57. As described in paragraphs 1 through 44, the AmeriFirst investments described in detail herein, have been offered and sold to the public through a general solicitation of investors. No registration statements were ever filed with the Commission or otherwise in effect with respect to these securities.

58. By reason of the foregoing, the Defendants have violated and, unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

### FOURTH CLAIM
### Claim Against the Relief Defendants
### As Custodians of Investor Funds

59. Plaintiff Commission repeats and realleges paragraphs 1 through 44 of this Complaint and incorporated herein by reference as if set forth *verbatim*.

60. As set forth in this Complaint, Relief Defendants have received funds and property from one or more of the Defendants, which are the proceeds, or are traceable to the proceeds, of the unlawful activities of Defendants, as alleged in paragraphs 1 through 44, above.

61. Relief Defendants have obtained the funds and property alleged above as part of and in furtherance of the securities violations alleged in paragraphs 1 through 44 and under the circumstances in which it is not just, equitable or conscionable for them to retain the funds and property. As a consequence, Relief Defendants Hess and American Eagle have been unjustly enriched.

### RELIEF REQUESTED

**WHEREFORE**, Plaintiff respectfully requests that this Court:

### I.

Temporarily, preliminarily and permanently Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act, and Rule 10b-5 thereunder.

**II.**

Enter an Order *instanter* freezing the assets of Defendants and Relief Defendants and directing that all financial or depository institutions comply with the Court's Order. Furthermore, order *instanter* that Defendants and Relief Defendants repatriate any funds held at any bank or other financial institution not subject to the jurisdiction of the Court, and that they direct the deposit of such funds in identified accounts in the United States, pending conclusion of this matter.

**III.**

Order *instanter* that Defendants and Relief Defendants shall file with the Court and serve upon Plaintiff Commission, no later than 72 hours after notice of this Order, an accounting, under oath, detailing all of their assets and all funds or other assets received from investors and from one another.

**IV.**

Order *instanter* that Defendants and Relief Defendants be restrained and enjoined from destroying, removing, mutilating, altering, concealing or disposing of, in any manner, any of their books and records or documents relating to the matters set forth in the Complaint, or the books and records and such documents of any entities under their control, until further order of the Court.

**V.**

Order *instanter* the appointment of a receiver *pendente lite* for Defendants and Relief Defendants, for the benefit of AmeriFirst investors, to marshal, conserve, protect and hold funds and assets obtained by the Defendants and Relief Defendants and their agents, co-conspirators and others involved in this scheme, wherever such assets may be found, or, with the approval of the Court, dispose of any wasting asset in accordance with the application and proposed order provided herewith.

## VI.

Order that the parties may commence discovery immediately, and that notice periods be shortened to permit the parties to require production of documents, or the deposition of any party or party-representative, on 72 hours notice.

## VII.

Order the Defendants to disgorge an amount equal to the funds and benefits they obtained illegally as a result of the violations alleged herein, plus prejudgment interest on that amount, and order the Relief Defendants to disgorge an amount equal to the illegally obtained investors funds they received from the Defendants, plus prejudgment interest on that amount.

## VIII.

Order civil penalties against the Defendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], for the violations alleged herein.

## IX.

Order such further relief as this Court may deem just and proper.

For the Commission, by its attorneys:

Dated and signed on the 2nd day of July 2007

_____
JEFFREY B. NORRIS
Washington, D.C. Bar No. 424258
U.S. SECURITIES & EXCHANGE COMMISSION
801 Cherry St., 19th Floor
Fort Worth, Texas  76102
Office:  (817) 978-6452
Fax:   (817) 978-4927

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I.(a) PLAINTIFFS

UNITED STATES SECURITIES AND EXCHANGE COMMISSION

### DEFENDANTS

*Amerifirst Funding, Inc. aka Ameri-First Funding, Inc aka Ameri First Funding, Inc.; AmeriFirst Acceptance Corp.; Jeffrey C. Bruteyn, Dennis C. Bowden; Defendants, and American Eagle Acceptance Corp., and Hess Financial Corp., Relief Defendants.*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant: __Dallas__
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEY (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Jeffrey B. Norris
U.S. Securities and Exchange Commission
801 Cherry Street, Suite 1900
Fort Worth, TX 76102
(817) 978-6452

ATTORNEYS (IF KNOWN)

RECEIVED JUL - 2 2007 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT

3-07CV1188-D

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 156 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | | ☐ 365 Personal Injury - Product Liability | | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | | ☐ 470 Racketeer Influenced and Corrupt Organization |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | **PROPERTY RIGHTS** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 820 Copy rights | ☒ 850 Securities Commodities/Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | | ☐ 830 Patient | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | | ☐ 840 Trademark | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 891 Agricultural Acts |
| | | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395FF) | ☐ 892 Economic Stabilization |
| | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 893 Environmental Matters |
| | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 894 Energy Allocation Act |
| | | | | ☐ 864 SSID Title XVI | ☐ 895 Freedom of Information Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | | |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 240 Torts to Land | | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | |
| | | ☐ 550 Civil Rights | | | |

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (Specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

## VI. CAUSE OF ACTION
CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING (DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY):
Brief Description of cause: Sections 17(a), 5(a), 5(c) of the Securities Act of 1933 [15 U.S.C. § 77q(a), 77e(a), 77e(c)] and Section 10(b) Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## VII. REQUESTED IN COMPLAINT:
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND ☐ YES    ☐ NO

## VIII. RELATED CASE(S) IF ANY (See Instructions):
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY
Receipt # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____