IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF TEXAS
                       DALLAS DIVISION

SECURITIES AND EXCHANGE         §
COMMISSION,                     §
                                §
                 Plaintiff,     §
                                § Civil Action No. 3:07-CV-1188-D
VS.                             §
                                §
AMERIFIRST FUNDING, INC.,       §
et al.,                         §
                                §
                 Defendants.    §

                       MEMORANDUM OPINION

    Having denied respondent Lois Whitcraft's ("Lois'") motion for stay pending appeal by February 29, 2008 order, the court now sets forth its reasons.[1]

                               I

    After a show cause hearing, the court held Lois, her son Jeffrey E. Bruteyn ("Bruteyn"), and Bruteyn's lawyer, Phillip W. Offill, Esquire ("Offill"), in civil contempt for violating a July 2, 2007 order of this court freezing the assets of defendants and of relief defendants ("Freeze Order") and an order appointing temporary receiver.[2] *See SEC v. AmeriFirst Funding, Inc.*, 2008 WL 282275, at *4-*16 (N.D. Tex. Feb. 1, 2008) (Fitzwater, C.J.) ("*SEC*

---

[1]Although the court has attempted to set out its essential reasoning, this memorandum opinion is necessarily confined to the explanation that can be given in the context of an expedited ruling.

[2]The court recites only those facts necessary to resolve this motion. For a complete account of the contempt proceedings, *see SEC v. AmeriFirst Funding, Inc.*, 2008 WL 282275 (N.D. Tex. Feb. 1, 2008) (Fitzwater, C.J.) ("*SEC I*").

I"). The ruling was based, *inter alia*, on respondents' participation in a transaction in which a Picasso painting ("the Picasso")[3] was purchased using funds from United Financial Markets, Inc. ("United Financial"). The court held that both the Picasso and the $431,161.00 purchase money obtained from United Financial were covered assets or monies under the Freeze Order; thus the transaction violated the Freeze Order from both sides of the sale. *Id.* at *5-*10. The court further held that Lois was subject to the Freeze Order because she had notice of the Freeze Order before the sale and she actively participated with Bruteyn, a defendant in the action, in the prohibited transaction. *Id.* at *1, *12. Finally, the court held Lois in contempt of the Freeze Order because she knowingly aided and abetted Bruteyn in the sale of the Picasso. *Id.* On February 25, 2008 Lois moved to stay the contempt order pending appeal. The court denied the motion by order filed February 29, 2008, stating that this opinion would follow.

II

To decide whether a stay pending appeal should be granted, the court must consider the following elements:

> (1) Whether the movant has made a showing of likelihood of success on the merits;
> (2) Whether the movant has made a showing of irreparable injury if the stay is not granted;
> (3) Whether the granting of the stay would substantially harm the other parties; and

---

[3]*See SEC I* for an explanation of the court's use of the term "the Picasso." *Id.* at *2 n.4.

>      (4) Whether the granting of the stay would
>      serve the public interest.

*In re First S. Sav. Ass'n*, 820 F.2d 700, 704 (5th Cir. 1987) (citing *Ruiz v. Estelle*, 666 F.2d 854, 856 (5th Cir. 1982)). Because the court holds that Lois has not made the required showing of a likelihood of success on the merits, and because without such a showing she is not entitled to a stay, the court denies her motion to stay the contempt order pending appeal.[4]

                                III

Lois does not challenge the court's holding that the sale of the Picasso was a prohibited transaction, i.e., both the Picasso and the $431,161.00 from United Financial were covered by the Freeze Order. Nor does Lois dispute that she had notice of the Freeze Order before she agreed to proceed with the sale of the Picasso. Nor does she contest that her notice of the Freeze Order and her active participation in the sale with her son, Bruteyn, subjected her to the court's order. Rather, Lois contends that she

---

[4]Because Lois cannot satisfy the first element, the court need not analyze the remaining three. *Cf. Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 203 (5th Cir. 2003) (addressing four-factor preliminary injunction test and holding that "[a]s alone, the absence of likelihood of success on the merits is sufficient to make the district court's grant of a preliminary injunction improvident as a matter of law, we need not address the three remaining prongs of the test for granting preliminary injunctions."); *see also Ponce v. Socorro Indep. Sch. Dist.*, 508 F.3d 765, 768 (5th Cir. 2007) (holding on basis of first factor alone that it was error for district court to issue preliminary injunction) ("Our analysis begins—and ends—with the first requirement.").

will be successful in appealing the contempt order against her because the evidence establishes that she had a good faith belief that the Picasso sale was not in violation of the Freeze Order. Lois correctly points out that, as a nonparty to the enforcement action, a good faith defense would prevent the court from holding her in contempt. *See SEC I*, 2008 WL 282275, at *3 ("'Although good faith is irrelevant as a defense to a civil contempt order, good faith is relevant to whether [a nonparty] aided or abetted [a party] in dissipating the funds with knowledge that [the nonparty] was violating the court's orders.'" (quoting *Waffenschmidt v. Mackay*, 763 F.2d 711, 726 (5th Cir. 1985)). But the court disagrees with Lois' conclusion that she had such a good faith belief.

Although Lois was not personally served with the Freeze Order, she admits that she was aware of the Freeze Order before the July 5, 2007 sale of the Picasso. At a point in time prior to the sale, Bruteyn telephoned Lois and apprised her of both the Securities and Exchange Commission ("SEC") lawsuit against him and the Freeze Order. Bruteyn suggested that Lois sell the Picasso to United Financial for $500,000. He explained to Lois that the purpose of the sale was to get around the Freeze Order and provide him with living expenses and attorney's fees. Lois also knew at the time that the Picasso was in Bruteyn's actual possession. After agreeing to the sale, Lois received a $431,161.00 wire transfer in

her bank account on July 5, 2007. Lois admitted that she never spoke with the buyer of the Picasso but simply gave Bruteyn the authority to go through with the transaction. While Lois said that she consulted with her attorney about the legality of the sale, this conversation did not occur until weeks after the sale.

Lois testified that she had a good faith belief that the Picasso was not covered by the Freeze Order, but the court does not find this testimony to be credible. A good faith defense must be "objectively reasonable." *United States v. Rojas Alvarez*, 451 F.3d 320, 330 (5th Cir. 2006) (applying objectively reasonable standard for good faith defense in context of exclusionary rule). Although Lois may not have had certain knowledge that the Picasso was covered by the Freeze Order, she was aware of several red flags that prevented her from invoking a good faith defense.

Until Bruteyn telephoned Lois after the July 2, 2007 SEC lawsuit was filed and the Freeze Order was issued, Lois had no intention of selling the Picasso. As the court found in *SEC I*, "Bruteyn was undoubtedly the architect and moving force behind the Picasso sale." *SEC I*, 2008 WL 282275, at *10. Lois never spoke with the buyer of the Picasso, and she relied entirely on Bruteyn to carry out the sale and for her assurance that the transaction was legal. At the time Bruteyn gave her these assurances, Lois knew that the SEC had just commenced a civil action against him for securities fraud. She also knew that the purpose of the sale was

to circumvent the Freeze Order and channel money to her son for his living expenses and attorney's fees. Under such circumstances, Bruteyn's assurance that the sale was legitimate could not have given Lois an objectively reasonable good faith belief that the sale did not violate the Freeze Order.

The evidence does not establish that Lois knew about all of the particulars of the Freeze Order. But Lois was aware that, at the time of the sale, Bruteyn was in possession of the Picasso (it was physically located in his residence in Dallas, not in her home in Pennsylvania). And the Freeze Order clearly covered all assets in Bruteyn's actual possession. *Id.* at *5. That Lois did not know about the particulars of the Freeze Order might have entitled her to a good faith defense had the provision of the Freeze Order covering the Picasso been of a different category than the general provision covering Bruteyn's other assets, of which she was definitely aware. There is nothing unusual about a freeze order that covers both the defendant's assets and assets in his actual possession. Because the provision of the Freeze Order for which Lois professes ignorance is of the same general character as the provision of which she had knowledge, Lois is not entitled to a good faith defense.

The authorities Lois cites are unavailing. *Walker v. City of Birmingham*, 181 So. 2d 493 (Ala. 1966), dealt with convicting a nonparty of criminal contempt, which required a willful violation

of a court order, *id.* at 504, and thus does not apply in the context of civil contempt. Lois also cites *Parker v. Ryan*, 960 F.2d 543 (5th Cir. 1992), as supporting the proposition that when a nonparty, such as Lois, asserts an independent interest in the subject property—here the Picasso—and is not merely acting on behalf of the defendant, the court does not have jurisdiction over her. *Id.* at 546. But *Parker* went on to state that, if the nonparty "(1) knew about the injunction . . . and (2) acted as [the respondent's] agent or aided and abetted [the respondent] for the purpose of advancing his interest," then the court would have jurisdiction over the nonparty and the subject property. *Id.* In *SEC I* the court held that Lois knew about the Freeze Order and aided and abetted Bruteyn in selling the Picasso to further Bruteyn's interests. *SEC I*, 2008 WL 282275, at *12. Therefore, *Parker* is of no assistance to Lois' challenge to the court's contempt order.

Because the evidence does not support the finding that Lois acted in good faith, the court concludes that she will not succeed on the merits in appealing the court's contempt order.

\* \* \*

Accordingly, the court denied Lois' February 25, 2008 motion to stay the contempt order pending appeal for the reasons set out in this memorandum opinion.

March 4, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE