IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE §
COMMISSION, §
 §
                    Plaintiff, §
 § Civil Action No. 3:07-CV-1188-D
VS. §
 §
AMERIFIRST FUNDING, INC., §
et al., §
 §
                    Defendants. §

MEMORANDUM OPINION
AND ORDER

The court-appointed temporary receiver ("Receiver") and
plaintiff Securities and Exchange Commission ("SEC") apply for
attorney's fees and costs incurred in prosecuting a civil contempt
proceeding against Jeffrey C. Bruteyn ("Bruteyn"), Phillip W.
Offill, Esquire ("Offill"), and Lois Whitcraft ("Lois"). Because
the court is unable to determine the proper award based on these
applications, it denies both applications without prejudice, and it
directs the Receiver and the SEC to submit supplemental
applications that conform to the rulings and address the
deficiencies set out in this memorandum opinion and order.[1]

_____

[1] The Receiver's fee application addresses whether he can
collect his attorney's fees and costs from the contemnors, not
whether the fees and costs are recoverable from the receivership
estate as part of a periodic fee application. Fees and costs that
are not recoverable from the contemnors may have sufficiently
benefited the receivership estate that they are recoverable from
the estate. Accordingly, the fact that the court has disallowed
the Receiver's request for particular attorney's fees and costs
from the contemnors does not necessarily mean that it will do so if
the Receiver requests them from the receivership estate.

Earlier this year, the court held Bruteyn, Offill, and Lois in civil contempt of the court's July 2, 2007 Freeze Order for their involvement in a transfer of $431,161.00 from United Financial Markets, Inc. ("United Financial") to Lois in exchange for a reproduction print of a Picasso painting. *See SEC v. AmeriFirst Funding, Inc.*, 2008 WL 282275, at *4-*12 (N.D. Tex. Feb. 1) (Fitzwater, C.J.), *appeals docketed*, No. 08-10174 (5th Cir. Feb. 26, 2008), and No. 08-10257 (5th Cir. Mar. 20, 2008). The court also held Brutyen in contempt for refusing to deliver to the Receiver a BMW vehicle, in violation of the court's receivership orders. *See id.* at *16. In its ruling, the court held that the Receiver and the SEC were "entitled to recover their reasonable and necessary attorney's fees and costs[.]" *Id.* at *20. The Receiver and SEC have applied for this relief. The Receiver and his accounting firm, Weaver and Tidwell, LLP ("Weaver and Tidwell"), seek to recover $82,282.70 for accounting work undertaken in preparation for the contempt hearing. The Receiver also requests $154,660 in attorney's fees for its counsel, Andrews Kurth, LLP ("Andrews Kurth"), and $7,875.32 in out-of-pocket expenses and fees incurred by Andrews Kurth in prosecuting the contempt proceeding. The SEC seeks $19,360 in attorney's fees and $2,727.08 in related costs. Although no party has filed an opposition response to either fee application it is settled that "the court can adjust the

fee request[s] *sua sponte*." *Wright v. Blythe-Nelson*, 2004 WL
2870082, at *5-*6 (N.D. Tex. Dec. 13, 2004) (Fitzwater, J.)
(disallowing hours inadequately documented, despite absence of
opposition to fee request on this basis) (citing *Curtis v. Bill
Hanna Ford, Inc.*, 822 F.2d 549, 551 (5th Cir. 1987) (permitting
court to adjust fee where requested amount was unopposed, because
court is obligated to award only "reasonable attorney's fees")).

## II

"An award of attorneys' fees and costs to the prevailing party
in a civil contempt action is determined according to the 'lodestar
method.'" *Microsoft Corp. v. United Computer Res. of N.J., Inc.*,
216 F.Supp.2d 383, 387 (D.N.J. 2002). The lodestar fee is
calculated "by multiplying the number of hours reasonably expended
on the litigation by a reasonable hourly rate." *Rutherford v.
Harris County*, 197 F.3d 173, 192 (5th Cir. 1999). While there is
a strong presumption of the reasonableness of the lodestar amount,
*see Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th
Cir. 2006), the court must "consider whether the lodestar amount
should be adjusted upward or downward, depending on the
circumstances of the case and after addressing the *Johnson*
factors."[2] *Rutherford*, 197 F.3d at 192; *see Hensley v. Eckerhart*,

---

[2]The *Johnson* factors are: (1) the time and labor required for
the litigation; (2) the novelty and complication of the issues; (3)
the skill required to properly litigate the issues; (4) whether the
attorney was precluded from other employment by the acceptance of
this case; (5) the attorney's customary fee; (6) whether the fee is

461 U.S. 424, 434 (1983) ("The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974))). "[T]he district court must be careful not to double count a *Johnson* factor already considered in calculating the lodestar[.]" *Walker v. U.S. Dept. Of Housing & Urban Dev.*, 99 F.3d 761, 771-72 (5th Cir. 1996) (internal quotation marks and ellipsis omitted) (indicating that first and seventh *Johnson* factors are already included in lodestar amount). "The most critical factor in determining an attorney's fee award is the degree of success obtained." *Saizan*, 448 F.3d at 799 (internal quotation marks omitted) (quoting *Singer v. City of Waco*, 324 F.3d 813, 829 (5th Cir. 2003)); *Walker*, 99 F.3d at 772 ("[Defendant] contends that a downward adjustment of the lodestar is appropriate because of the limited nature of the plaintiffs' success. [Defendant] is, in fact, correct that limited success requires a

_____

fixed or contingent; (7) whether the client or the circumstances imposed time limitations; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "In applying [the *Johnson* factors], the district court must explain the findings and the reasons upon which the award is based. However, it is not required to address fully each of the 12 factors." *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987) (citation omitted).

downward adjustment."); *Wright*, 2004 WL 2870082, at *8 (reducing lodestar amount by 50% because of plaintiff's limited success at trial).

> If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith . . . . Again, the most critical factor is the degree of success obtained.

*Hensley*, 461 U.S. at 436.

As the parties seeking attorney's fees, the Receiver and SEC "are charged with the burden of showing the reasonableness of the hours billed and, therefore, are also charged with proving that they exercised billing judgment." *Saizan*, 448 F.3d at 799. "Billing judgment requires documentation of the hours charged and of the hours written off as unproductive, excessive, or redundant." *Id.*

III

The court first determines the lodestar for both the Receiver's and SEC's request for attorney's fees.

A

"When the rate is not contested, it is *prima facie* reasonable." *Islamic Ctr. of Miss., Inc. v. City of Starkville*, 876 F.2d 465, 469 (5th Cir. 1989); *see also Skidmore Energy, Inc. v. KPMG*, 455 F.3d 564, 568-69 (5th Cir. 2006) ("As the hourly rates

submitted by the defense were not disputed, the sole factor for the court's determination was the reasonable number of hours expended." (footnote omitted)). The five Andrews Kurth attorneys who represented the Receiver billed at an hourly rate of between $295 and $420. The Receiver submits evidence that these hourly rates are reduced from the attorneys' normal billing rates by 10% to 20%. Based on these attorneys' backgrounds and the court's understanding of the local market, the court finds that these billing rates are reasonable.

The SEC's attorney's fees request is based on an hourly rate of $220 per hour, which is the SEC's conservative estimate of what its lead counsel's time is worth. The SEC's lawyers do not have a regular billing rate. But "[w]e see no reason why the government should not be able to recover a reasonable fee for its attorney's work calculated at the same rate that the attorney would be compensated by the prevailing local economy." *United States v. Big D Enters., Inc.*, 184 F.3d 924, 936 (8th Cir. 1999); *see also Napier v. Thirty or More Unidentified Fed. Agents Employees or Officers*, 855 F.2d 1080, 1092-93 (3d Cir. 1988) ("A number of courts have concluded that the hourly rate properly charged for the time of a government attorney is the amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." (internal quotation marks omitted)). Based on the SEC's lead counsel's experience and

education, the court agrees with the SEC that $220 per hour is a conservative estimate of what he would charge in the market.

B

The Andrews Kurth attorneys expended a total of 448.2 hours prosecuting the show cause hearing. After reviewing their billing records, the court has no basis to conclude for purposes of determining the lodestar amount that this amount of time was unreasonable. The SEC's fee request is based on its estimate of 88 hours of legal work by its lead counsel, Jeffrey B. Norris, Esquire ("Norris"). Although Norris did not maintain contemporaneous billing records of his time, the SEC's fee application divides Norris's legal services into seven categories and includes a declaration in which Norris provides a conservative estimate of the hours of work he spent on each category of work. The Fifth Circuit has rejected the requirement that attorneys present contemporaneous time records of their work in order to recover attorney's fees. *See Dennis v. Warren*, 779 F.2d 245, 249 (5th Cir. 1985) ("Although this Court has admonished counsel in previous cases that time records should be kept, we have not held that contemporaneous time sheets are indispensable."). Moreover, "[g]overnment attorneys . . . are not normally expected to record their hours, as they do not normally litigate in fee-generating situations." *EEOC v. Local 638 & Local 28 of the Sheet Metal Workers' Int'l Ass'n*, 1991 WL 278917, at *2 (S.D.N.Y. Dec. 18, 1991). The court finds that the

- 7 -

SEC's declaration, supported by time estimates, is sufficient to establish the amount of hours reasonably expended on the contempt proceedings.

Although the Receiver's and SEC's hours appear reasonable when viewed in isolation, when considered together, substantial portions of their work appear duplicative. "A reduction for duplication of effort 'is warranted only if the attorneys are unreasonably doing the same work.'" *Microsoft Corp.*, 216 F.Supp.2d at 389-90 (reducing hours reasonably worked in successfully prosecuting contempt proceeding because work of complainant's local and national counsel excessively overlapped) (quoting *Rode v. Dellarciprete*, 892 F.2d 1177, 1187 (3d Cir. 1990)). Based on the court's review of the Receiver's and the SEC's billing records, the descriptions of their work, and the presentation of their claims at the contempt hearing, it appears that the Receiver and SEC did not employ billing judgment to eliminate redundant or excessive hours. It is also unclear why it was necessary for both the Receiver and the SEC to actively prosecute the contempt proceeding, considering that grounds and arguments for relief largely overlapped.[3]

_____

[3]Moreover, the SEC represented to the court in the contempt proceeding that, as a matter of policy, it only sought to hold Bruteyn in contempt. *See AmeriFirst Funding*, 2008 WL 282275, at *1 n.1. Whether Ronald Whitcraft ("Ronald") should be held in contempt for refusing to deed over the house at 6717 Lakewood Boulevard, Dallas, Texas ("Lakewood House") had no bearing on holding Bruteyn in contempt. Thus, at the very least, any SEC legal services that were related solely or primarily to its request to hold Ronald in contempt for his refusal to deed over the

Consequently, the court will require that the Receiver and the SEC submit supplemental applications that conform to the principles of billing judgment when seeking compensation for attorney work that appears to overlap. If the parties conclude that all or some of this work was not redundant, they must adequately explain why and must establish that they exercised billing judgment in requesting compensation for such hours. Because the court cannot now determine the number of hours reasonably expended by Andrews Kurth and the SEC's counsel in prosecuting their contempt applications, it cannot calculate the lodestar.

IV

Moreover, based on the Receiver's and SEC's limited success in the contempt proceeding, the court also concludes that the lodestar amount, once it is determined, must be reduced. The Receiver and the SEC advanced three basic claims in the show cause hearing: first, that Bruteyn, Offill, Lois, and Ronald Whitcraft ("Ronald") violated the court's July 2, 2007 Freeze Order through the transfer of $431,161.00 from United Financial to Lois in exchange for a reproduction Picasso; second, that Ronald violated the receivership orders by refusing to deed over to the Receiver the house at 6717 Lakewood Boulevard, Dallas, Texas ("Lakewood House"); and third, that Bruteyn violated the receivership orders by refusing to hand over to the receiver the BMW vehicle that Bruteyn was driving.

Lakewood House were unnecessary.

The Receiver and SEC were unsuccessful in prosecuting their second major claim, which involved the Lakewood House.[4]  The court rejected the Receiver's argument that the Lakewood House was a receivership asset simply because Hess Financial Corp. ("Hess Financial") put a lot of money, traceable to defrauded investors, into the house.  *See AmeriFirst Funding*, 2008 WL 282275, at *13-*14.  The court held that unless it set aside the conveyance of the Lakewood House to Ronald, as well as the note and deed of trust, the Lakewood House could not be characterized as a receivership asset.  *Id.* at *14.  Although the Receiver attempted to set aside the transfer to Ronald on the basis of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (Vernon 2002), the court held that there was no legal basis to advance a TUFTA claim in contempt proceedings.  *Id.* at *14-*16.

Because the Receiver and the SEC were unsuccessful in holding Ronald in contempt of court for refusing to deed over the Lakewood House, they are not entitled to recover attorney's fees for services that were solely or primarily devoted to pressing this claim for relief.  When the Receiver and SEC submit their supplemental applications, they must eliminate hours that fall within this category.

---

[4]Notably, the Receiver's and SEC's third claim for relief, while successful, required very little time and evidence.

A review of Andrews Kurth's billing records and the SEC's declaration of its legal services reveals that most of the work described was multifaceted, i.e., the time was spent on more than one contempt claim. As to these mixed entries, the court directs the Receiver and SEC to provide reasonable estimates of how much time in a given billing entry (or, for the SEC, a category of work) was solely or primarily devoted to prosecuting the Lakewood House claim, without being reasonably necessary for the prosecution of the other, successful claims. For instance, the Andrews Kurth attorneys and Norris billed for their attendance at the contempt hearing. But a substantial part of the two-day contempt hearing was devoted to the Lakewood House claim. Likewise, although the Receiver and the SEC would have reasonably incurred time drafting legal memoranda that did not pertain to the Lakewood House claim, they must provide the court a reasonable estimate of how much legal writing time incurred was solely or primarily related to prosecuting that claim. The parties must also adhere to these principles when revising the hours claimed for work on other entries that fall within this category.

B

Although the Receiver and SEC were successful in establishing that Bruteyn, Offill, and Lois should be held in contempt for their involvement in the Picasso print transaction with United Financial, the court rejected their two grounds of relief. First, it held

that the $431,161.00 in United Financial's account was not covered by the Freeze Order simply because United Financial owed much or all of the money to entities that were under the Freeze Order. *AmeriFirst Funding*, 2008 WL 282275, at *4. Second, the court declined to set aside the Picasso sale on the basis of TUFTA, because contempt proceedings are not the proper setting for such claims. *See id.* at *5, *14-*16. The court found that the Picasso sale violated the Freeze Order on the basis that the Picasso print was in the actual possession of Bruteyn and that the $431,161.00 in United Financial's account was in Bruteyn's constructive possession. *See id.* at *5-*10. Although the court relied on much of the evidence proffered in support of the Receiver's and SEC's two unsuccessful theories for relief, some of the proof in support of these two unsuccessful grounds of relief was irrelevant. For instance, in support of their TUFTA theory, the Receiver and SEC introduced evidence that United Financial was insolvent at the time of the Picasso print sale or was rendered insolvent by the sale. United Financial's debts to Hess Financial and American Eagle Acceptance Corp. were relevant to the court's finding that Bruteyn was in constructive possession of United Financial's accounts, *see id.* at *10, but the question whether United Financial was insolvent was irrelevant considering the court's holding that contempt proceedings are an improper forum for prosecuting a TUFTA claim. The court therefore directs the Receiver and SEC to eliminate from

their supplemental fee applications all hours or legal services spent solely or primarily developing this theory of insolvency. Similarly, if there was other legal work performed with respect to the Picasso sale that did not directly support the Receiver's and SEC's successful contempt claim on that transaction, the parties must accordingly eliminate those hours from their supplemental applications.

V

In addition to legal services, the Receiver seeks reimbursement for $82,282.70 to compensate Weaver and Tidwell for accounting work preparing for the contempt hearing, as well as $7,875.32 in other litigation costs.[5] Similarly, the SEC requests reimbursement for $2,727.08 of related litigation costs.[6] The court must first determine whether these fees and expenses are compensable in connection with a successful contempt ruling.

A

The court's contempt ruling permits the Receiver and the SEC to "recover their reasonable and necessary attorney's fees *and costs*[.]" *AmeriFirst Funding*, 2008 WL 282275, at *20 (emphasis added). But the opinion does not specify the kinds of expenses or fees for which the Receiver and the SEC may apply for reimbursement

_____

[5]These litigation expenses include photocopies, parking, delivery expenses, local meals, hotel and lodging, other travel expenses, and professional services.

[6]These costs include photocopies and transcript fees.

under this category of costs.

Costs recoverable in connection with a favorable contempt ruling are broader than are taxable costs that are recoverable under 28 U.S.C. § 1920. *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 130-31 (5th Cir. 1973). In *Sheila's Shine Products* the contemnor challenged the district court's authority to award legal and travel expenses, contending that § 1920 does not permit such costs. *Id.* at 130. Recognizing that "[§ 1920 did] not authorize assessment of travel or legal expenses," the court affirmed the award of these costs on the basis that they were recoverable under a contempt order. *Id.* Section 1920 did not apply because "it deals only with costs taxed pursuant to a final judgment. The expenses assessed here were assessed pursuant to the court's finding that [the respondent] was in contempt of its final injunctive order." *Id.* at 130-31.

In *Tom James Co. v. Morgan*, 141 Fed. Appx. 894 (11th Cir. 2005) (per curiam), the court vacated the district court's ruling that the successful complainant could not recover $16,966.50 in investigative expenses that aided the complainant in gathering information in support of the contempt ruling. *Id.* at 899-900. The court held that, "[i]n awarding costs as a sanction for contempt, the district court is not bound by § 1920's list of costs that may be taxed pursuant to a final judgment." *Id.* at 900 (citing *Sheila's Shine Prods.*, 486 F.2d at 130-31).

> In this case, the district court concluded
> that [the party obtaining the contempt ruling]
> could not recover its investigative costs
> pursuant to Rule 54(d) and § 1920. This
> narrow interpretation of its inherent power to
> sanction was an error. Of course, as we
> stated above, implicit in the district court's
> inherent power to award contempt sanctions is
> also the district court's inherent power to
> decline to award reimbursement for
> investigative expenses. Thus, we vacate the
> denial of investigative expenses and remand to
> the district court so that it may exercise its
> inherent power and broad discretion with an
> understanding that it is not restricted by
> Rule 54(d) and § 1920.

*Id.* at 900.

The contemnors in *Robin Woods Inc. v. Woods*, 28 F.3d 396 (3d Cir. 1994), appealed the district court's award of $107,000 to compensate the complainant company for its "management's time and expense in preparing for the contempt litigation." *Id.* at 400 (internal quotation marks omitted). The court began with the premise that "'sanctions imposed after a finding of civil contempt to remedy past noncompliance with a decree are not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed.'" *Id.* at 400 (quoting *Hudson Transit Lines, Inc. v. Freund*, 509 F. Supp. 1172, 1178 (E.D.N.Y. 1981)). "Just as attorneys' fee awards are remedial and designed to compensate complainants for losses incurred as a result of the contemnors' violations, so too are awards to cover the other expenses involved in demonstrating violations." *Id.* at 401

(internal quotation marks and citations omitted). "Thus, there can be no doubt that the district court had the authority to order [the contemnors] to compensate [the complainant] for the time and expense its management incurred in enforcing the district court's injunction." *Id.*

B

Based on these principles, the court concludes that Weaver and Tidwell's time expended in preparing for the contempt proceeding is compensable as a contempt sanction. Similarly, the concept of costs in the contempt context is broad enough to encompass the litigation expenses and costs that the Receiver and the SEC request. These costs, however, are subject to being reduced on the basis of the complainants' lack of success in the contempt proceedings, even assuming they are otherwise reasonable and necessary. *See id.* at 401 (vacating award of $107,000 to compensate complainant's time and expenses in preparing for contempt hearing because district court reduced attorney's fees award to reflect complainant's limited success in contempt proceedings but nevertheless awarded all of complainant's costs without distinguishing between costs that aided successful claim and costs that aided unsuccessful claim). When the Receiver and the SEC submit their fee supplemental applications, they must eliminate litigation expenses and costs incurred solely or primarily in prosecuting unsuccessful claims, such as costs

incurred in litigating the claim that Ronald should have been held in contempt for failing to deed over the Lakewood House, and costs associated with the Picasso sale that supported the complainants' unsuccessful theories of relief and that did not aid in obtaining the ultimate contempt ruling. A review of Weaver and Tidwell's billing entries reveals that a majority of its time was spent reviewing the financial condition and history of Hess Financial. Because none of this work was relevant to the court's contempt ruling—it appears to support only the Lakewood House claim—the Receiver must eliminate these entries from his supplemental fee application or explain why he is entitled to recover in this contempt proceeding (as opposed to a general receivership fee application) for this work performed by Weaver and Tidwell.

C

The Receiver's and SEC's supplemental fee applications need not address the aspects of their current fee applications that the court has already approved in this memorandum opinion, e.g., the billing rates of the attorneys and accountants. Contemnors' opposition responses, if any, to the supplemental fee applications, and any replies to such responses, must be filed within the time permitted by the local civil rules.

*     *     *

For the foregoing reasons, the court denies without prejudice the Receiver's February 29, 2008 application for payment of professional fees and expenses, and it denies without prejudice the SEC's March 3, 2008 application for attorney's fees and costs. The supplemental applications required by this memorandum opinion and order must be filed within 30 days of the date it is filed.

**SO ORDERED.**

May 27, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE