IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SECURITIES AND EXCHANGE      §
COMMISSION,                  §
                             §
                 Plaintiff,  §
                             § Civil Action No. 3:07-CV-1188-D
VS.                          §
                             §
AMERIFIRST FUNDING, INC.,    §
et al.,                      §
                             §
                 Defendants. §

MEMORANDUM OPINION
AND ORDER

The court-appointed temporary receiver ("Receiver") moves to enforce the receivership order entered in this lawsuit and, alternatively, to retain funds paid to him by court order. Non-parties Ronald Whitcraft ("Ronald") and Lois Whitcraft ("Lois") (the "Whitcrafts"), whom the Receiver sought unsuccessfully to hold in civil contempt, apply for an award of attorney's fees. For the reasons set forth below, the court grants in part and denies in part the Receiver's motion, and it denies the Whitcrafts' application.

I

The background facts are set out in prior opinions in this case. *See, e.g., SEC v. AmeriFirst Funding, Inc.* ("*AmeriFirst I*"), 2008 WL 282275, at *1-*2 (N.D. Tex. Feb. 1, 2008) (Fitzwater, C.J.), *aff'd in part, vacated & remanded in part*, 570 F.3d 268 (5th Cir. 2009). The court will therefore focus its discussion of the background facts and procedural history on those necessary to

understand this decision.

Plaintiff Securities and Exchange Commission ("SEC") filed this lawsuit on July 2, 2007 against defendants Jeffrey C. Bruteyn ("Bruteyn"), AmeriFirst Funding, Inc., and AmeriFirst Acceptance Corp., alleging that they were operating an investment fraud, in violation of §§ 5(a), (c), and 17(a) of the Securities Act of 1933 and § 10(b) of the Securities and Exchange Act of 1934.  The SEC joined a number of corporate entities as relief defendants, including Hess Financial Corp. ("Hess Financial") and, in a July 25, 2007 first amended complaint, United Financial Markets, Inc. ("United Financial").  On the same day the SEC filed suit, the court issued two orders (the "Orders").  The first was an order freezing the assets of the defendants and relief defendants (the "Freeze Order").  The Freeze Order provided, *inter alia*, that

> Defendant and Relief Defendants, their officers, agents, employees, servants, attorneys and all persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, are restrained and enjoined from, directly or indirectly, making any payment or expenditure of funds . . . and from assigning conveying, transferring, encumbering, disbursing, dissipating, selling, hypothecating, or concealing any assets, monies, or other property owned by or *in the actual or constructive possession* of defendants or Relief Defendants[.]

Freeze Order § IV (emphasis added).  The court entered a second order appointing William Brown ("Brown") as the temporary receiver ("Receivership Order").  The Receivership Order provided, in

- 2 -

relevant part, that "[t]he court hereby takes exclusive jurisdiction and possession of the assets, monies, securities, claims in action, and properties, real and personal, tangible and intangible, of whatever kind and description, wherever situated, of defendants [and Relief Defendants] or any entities controlled by defendants or Relief Defendants." Receivership Order, § I(1). The Receivership Order also directed certain parties to turn over assets to the Receiver:

> All persons, including defendants and Relief Defendants, and their officers, agents, servants, employees, brokers, facilitators, attorneys, and all persons in active concert or participation with them who receive actual notice of this order by personal service or otherwise . . . shall promptly deliver to the Receiver all Receivership Assets in the possession or under the control of any one or more of them and shall promptly surrender all Receivership Records.  No separate subpoena shall be required.

*Id.* at § I(3).

On September 24, 2007 the Receiver, later joined in part by the SEC,[1] filed a motion to show cause, seeking to establish that Bruteyn, his mother Lois, his stepfather Ronald, and his former attorney, Phillip W. Offill ("Offill"), should be held in civil contempt for violating the Orders.  The motion alleged that, within days after the SEC filed suit and the court entered the Orders, Bruteyn and Offill orchestrated a scheme to use $431,161.00

---

[1]The SEC joined the motion only as to Bruteyn.

belonging to United Financial——a corporation effectively controlled by Bruteyn, and one that would later be joined as a relief defendant——to pay for Bruteyn's living expenses and attorney's fees.  At the contempt hearing, the Receiver presented evidence that, at the time of the meeting, the funds in question were owed by United Financial to Hess Financial (one of the original relief defendants), and that Bruteyn had constructive possession of the funds.  The Receiver maintained that the money was subject to the Freeze Order and should have been surrendered under the terms of the Receivership Order.

According to the Receiver, Bruteyn and Offill determined that United Financial could use the funds to "purchase" a Picasso painting[2] that belonged to Lois and hung in a Dallas-area home owned in Ronald's name but occupied by Bruteyn (the "Lakewood House").  The transaction was completed with Lois' approval, and the United Financial funds were transferred to an account that Lois owned.  The money was then divided, with some proceeds going to Bruteyn or his lawyers and some being used by the Whitcrafts for personal expenses.

Based on the evidence presented during the contempt hearing, the court found that the "Picasso sale contravened the Freeze Order on both sides of the sale because both the Picasso and the

---

[2]The so-called "Picasso painting" "was not an original, but rather a reproduction print of relatively modest value." *Whitcraft v. Brown*, 570 F.3d 268, 271 n.1. (5th Cir. 2009).

- 4 -

$431,161.00 were assets or monies subject to the Freeze Order." *AmeriFirst I*, 2008 WL 282275, at *10. Bruteyn was in actual possession of the Picasso (he occupied the Lakewood House in which the painting was located), had constructive possession of the $431,161.00 (Bruteyn was a 50% owner and exercised "significant control" over the United Financial account), and the United Financial funds were actually owed to Hess Financial (one of the original relief defendants). *Id.* at *5, *10. Although United Financial had not yet been joined as a relief defendant at the time of the Picasso purchase, Bruteyn had constructive possession of the funds in United Financial's accounts. The Picasso transaction therefore violated the Orders, which covered "any assets, monies, or other property owned by or in the actual or constructive possession of defendants." Freeze Order § IV.

The court imposed civil contempt sanctions against Brutyen, as a named defendant, and against Offill, who knowingly aided and abetted Bruteyn in the sale of the Picasso. *See AmeriFirst I*, 2008 WL 282275, at *11. The court also held Lois in civil contempt for violating the Freeze Order, finding that she was aware of the order and that she knowingly aided and abetted Bruteyn in violating it. *Id.* at *1, *12. Specifically, the court found that Lois admitted that she was aware of the order before the sale of the Picasso; she acknowledged that the purpose of the sale was to obtain money for Bruteyn's living expenses and attorney's fees; she agreed and

- 5 -

received a $431,161.00 wire transfer into her bank account; and she was an active participant with Bruteyn in the sale of the Picasso, and thus was a covered individual under the Freeze Order.   The court found that she knowingly aided and abetted Bruteyn in the sale of the Picasso because, even if she owned the Picasso, she knew at the time of the sale that the Picasso was in Bruteyn's actual possession; she admitted she never spoke with the buyer but simply gave Bruteyn the authority to go through with the transaction; it was not until weeks after the sale that she consulted with an attorney about the legality of the sale; and the Freeze Order clearly prohibited the sale of assets in Bruteyn's actual possession.   *Id.* at *12.

The court determined that the proper contempt sanction was to order the return of the funds that United Financial had paid for the painting.   It explained that "[t]he sanctions that the court will impose are intended to restore the status quo before the transaction."   *Id.* at *18.   The court ordered Lois to return the sum of $224,161.00, which represented the portion of the original $431,161.00 that still remained in Lois' control.   It ordered other parties to return various amounts that made up the balance of the funds.   Lois returned the money to the Receiver as ordered, along with some additional amounts that were owed due to penalties for

late payment.[3]  Lois' total payment——her contempt sanction plus the additional fines (the "Whitcraft Funds")——is the subject of the Receiver's present motion.

The court did not hold Ronald in contempt.  The Receiver sought to hold Ronald in contempt on two grounds: the scheme to divert $431,161.00 from United Financial via the Picasso sale, and the failure to transfer title to and possession of the Lakewood House to the Receiver.  *See id.* at *2.  The court found that although Ronald also received actual notice of the Freeze Order before the sale of the Picasso, he was not a covered individual under the Freeze Order because he did not act in concert with Bruteyn and others in the sale of the Picasso.  *Id.* at *12.  And although Ronald admitted helping Lois distribute the $431,161.00 after she received the wire transfer, this assistance came sufficiently after the sale, and his relevant conduct was otherwise sufficiently attenuated, that the court was unable to say by clear and convincing evidence that he thereby aided and abetted Bruteyn in the sale of the Picasso.  *Id.*

The Receiver argued on two grounds that the Lakewood House was a receivership asset and that Ronald should be held in contempt for

---

[3]In their briefing, the parties list different amounts for the total payment that Lois made.  It appears that Lois paid a lump sum covering (1) her contempt sanction of $224,161.00, (2) $7,000 to cover the contempt sanction that the court assessed against Bruteyn, and (3) $4,000 in fines for late payment, in compliance with the instructions in *AmeriFirst I*.

refusing to transfer title to and possession of the Lakewood House to the Receiver: First, the Lakewood House was a receivership asset because it was purchased and improved solely with Hess Financial money, was real property owned by Hess Financial, and Hess Financial was a relief defendant whose assets were to be delivered to the Receiver.  Second, Hess Financial's financing and improving the Lakewood House while Hess Financial was insolvent was fraudulent under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), Tex. Bus. & Com. Code Ann. § 24.001 *et. seq.* (Vernon 2009).  The Receiver therefore contended that the court should set aside the transfer of the Lakewood House to Ronald.  If the transfers were set aside under TUFTA, the Lakewood House would be owned by Hess Financial and thus a receivership asset, which Ronald would be obligated under the Receivership Order to deliver to the Receiver.  *See AmeriFirst I*, 2008 WL 282275, at *2.

The court rejected the first ground because it was unable to find that Hess Financial owned the Lakewood House on the basis that it had invested a great deal of money purchasing and improving it. Of the $965,774.84 invested, $600,000 was not Hess Financial's money because Ronald borrowed this amount from Hess Financial.  The Receiver and the SEC did not challenge the validity of Ronald's deed of trust and note with Hess Financial, even though Ronald had yet to make a payment under the note.  Ronald had an obligation to pay back the sum of $600,000, plus interest, to Hess Financial.

And a properly-recorded deed showed that Ronald held legal title to the Lakewood House.  Accordingly, unless the court set aside the transfer to Ronald, the Lakewood House was not Hess Financial's property and thus not a receivership asset.  *Id.* at *14.

The court also rejected the Receiver's second ground.  The Receiver sought to set aside the transfer of the Lakewood House as a fraudulent transfer under TUFTA.  *Id.*  But the Receiver had not given Ronald sufficient notice to defend a TUFTA claim during the contempt hearing.  *Id.* at *15.  And even if the Receiver had given adequate notice, the court held that it could not set aside a fraudulent transfer in the context of a contempt hearing.  *Id.* at *16.  The court reasoned that a contempt hearing should narrowly focus on whether a person had violated a definite and specific court order requiring that he perform or refrain from performing a particular act or acts with knowledge of the court's order.  If characterizing property as part of the receivership estate entailed an analysis of the elements of a TUFTA claim, then it was at least questionable, if not doubtful, that Ronald could have violated a "definite and specific" order in failing to surrender that property to the Receiver.  "It would take a second order declaring the property to be a receivership asset before the party could be held in contempt for failing to turn it over to the Receiver."  *Id.* at *15.

- 9 -

Lois and Offill appealed the court's contempt ruling.[4]   *See Whitcraft v. Brown*, 570 F.3d 268 (5th Cir. 2009) ("*Whitcraft I*"). Before the Fifth Circuit issued its decision, the Receiver filed a new lawsuit, *Brown v. Whitcraft* (the "Lakewood House Lawsuit"), No. 08-CV-0186-D (N.D. Tex. filed Feb. 4, 2008), asserting various claims arising out of Ronald's ownership of the Lakewood House. The Lakewood House Lawsuit was dismissed after the parties settled the case.   Under the terms of the Compromise Settlement Agreement ("Settlement Agreement"), Ronald transferred title to the Lakewood House to the Receiver.[5]   Whitcrafts App. 3.[6]   The Settlement Agreement stated that it was intended to settle all disputes between the Whitcrafts and the Receiver, "*including but not limited to* any such claim, suits, causes of action described in or arising out of or in connection with the [Lakewood House Lawsuit], or in any way related to the Lakewood House."   *Id.* at 6 (emphasis and bracketed material added).   But the Settlement Agreement also contained this exception (the "Exception Clause"): "Notwithstanding

---

[4]Bruteyn did not appeal.

[5]Although the Settlement Agreement expressly referenced claims in the Lakewood House Lawsuit, the parties sought and received approval of the Settlement Agreement in the instant case—i.e., the main receivership action—prior to moving for dismissal of the Lakewood House Lawsuit.

[6]Citations to "Whitcrafts App." are to the October 2, 2009 appendix that the Whitcrafts filed in response to the Receiver's motion to enforce receivership order and in support of their application for attorney's fees.

anything to the contrary contained herein . . . the Receiver and Lois Whitcraft expressly reserve and do not release their claims and arguments as set forth in the Appeal [i.e., *Whitcraft I*]." *Id.* (bracketed material added).

Under the language of the Exception Clause, the "claims and arguments" raised in *Whitcraft I* were excluded from the otherwise-comprehensive release between the Whitcrafts and the Receiver. Lois' arguments in *Whitcraft I* centered on her knowledge (or lack thereof) of the substance of the Orders. She argued that only knowledge of the content of the Orders would establish the necessary mental state to support a contempt finding as an aider and abettor. Although Lois admitted that she knew that her son Bruteyn's assets were subject to the Freeze Order at the time she approved the sale of the Picasso painting, she maintained that she did not know the details of the Orders and was unaware that the Picasso painting was also frozen property. She conceded that the United Financial funds were subject to the Orders through Bruteyn's constructive possession prior to the Picasso sale.

The Receiver asserted in the Fifth Circuit that the Whitcraft Funds were properly in the Receiver's possession. As he had in this court, the Receiver based this argument on various theories. He maintained that Lois had sufficient knowledge of the Orders and therefore could properly be held in contempt for aiding and abetting Bruteyn. As a necessary part of his contempt argument,

the Receiver asserted (and Lois apparently did not contest) that the money in the United Financial account was a receivership asset before it was transferred to Lois.   Accordingly, the Receiver posited that Lois could be held in civil contempt for the purpose of coercing the return of the Whitcraft Funds.

Alternatively, the Receiver argued that the funds could be reclaimed under TUFTA.   Here he maintained (again, without any apparent opposition from Lois) that the United Financial money was an asset of the Receivership Estate at the time of the Picasso sale.   Furthermore, because the Receiver was a creditor under Texas law, and because the Picasso painting was a replica print and essentially valueless, the transfer was fraudulent and subject to reversal.   Finally, as a part of his TUFTA analysis, the Receiver noted that summary proceedings were an acceptable method of recovering receivership assets.

The Fifth Circuit affirmed the court's contempt ruling against Offill, but it vacated the decision holding Lois in civil contempt as an aider and abettor.   *See Whitcraft I*, 570 F.3d at 273.   The panel held that there was insufficient evidence that Lois knew the details of the Freeze Order.   *Id.*   It concluded that it was unnecessary to address at length the arguments in the Receiver's brief.   The panel did affirm this court's finding, however, that the funds in United Financial's account that were used to purchase the Picasso were in Bruteyn's constructive possession, "thus

providing an alternative theory for why the sale of the Picasso was a violation of the freeze order." *Id.* at 273 n.5.  Moreover, the court expressly noted that, "[a]lthough [Lois] should not be held in civil contempt, our holding does not infringe upon the district court's authority to ensure the return of receivership assets through other means, including enforcement of the aforementioned receivership order." *Id.* at 273.

The Receiver now seeks to enforce the Receivership Order by asking the court to classify the Whitcraft Funds as receivership assets, thereby enabling the Receiver to maintain possession of the Funds in the absence of a determination that Lois is in civil contempt.  The Whitcrafts apply for an award of attorney's fees incurred in defending the Receiver's contempt motion.

## II

The court turns first to the Receiver's motion to enforce Receivership Order or, alternatively, motion to retain funds.

## A

As a threshold matter, the court must address questions about the scope of the Exception Clause contained in the Settlement Agreement.  The Settlement Agreement broadly settled the claims between the Receiver and the Whitcrafts.  But the Exception Clause excluded the "claims and arguments as set forth in the Appeal [i.e., *Whitcraft I*]" from the otherwise comprehensive release of all "claims, suits, [and] causes of action" between the Receiver

and Lois.  Whitcrafts App. 5, 6 (bracketed material added).  The parties' intent to release all claims through the Settlement Agreement, other than those specifically excluded, is apparent from the expansive language employed.  Thus if the Receiver's motion is not covered by the Exception Clause, it is precluded by the Settlement Agreement.

The court considers initially what "claims and arguments" were "set forth" in *Whitcraft I*.  The Receiver argues that the character of the Whitcraft Funds as a receivership asset was at issue in *Whitcraft I*, as well as in the contempt proceedings before this court.  He asserts that "[t]he claims and arguments in the instant Motion are the very same claims and arguments that were presented to this Court and to the [Fifth Circuit] in the [*Whitcraft I*] Appeal, and that were specifically not released or waived by the Receiver in the [Settlement Agreement]."  Rec. Mot. 6.  In response, Lois argues that the Settlement Agreement released all claims between the parties, but she does not specifically address (or even mention) the Exception Clause or the Receiver's assertion that the Exception Clause covers the instant motion.  She recognizes that the Fifth Circuit noted an "alternative theory" under which the Receiver could recover the Whitcraft Funds other than via contempt.  But she maintains that this "alternative theory" is precluded by the Settlement Agreement and that she settled all claims with the Receiver and Ronald by deeding over the

- 14 -

Lakewood house.    Whitcrafts Br. 16.    She concludes that, considering Fifth Circuit's reversal, the Receiver should not be permitted to keep the money that she paid while under threat of contempt sanctions, including incarceration.

The court holds that the Receiver's motion falls within the Exception Clause and that the Settlement Agreement does not prevent the Receiver from requesting that the court classify the Whitcraft Funds as receivership assets.    The Exception Clause covers "arguments and claims" presented in *Whitcraft I*.    The question whether the United Financial funds were subject to the Orders was central to the dispute concerning contempt sanctions, even though the parties apparently did not contest this in their Fifth Circuit briefing.    This is so because the Receiver's claim that Lois should be held in contempt rested on two premises: (1) that the Picasso transaction violated the Orders because both the painting and the United Financial funds used to purchase it were actually receivership assets, and (2) that Lois had acted with the requisite knowledge to hold her in contempt as an aider and abettor of Bruteyn.    The fact that both parties correctly recognized that the first element had been satisfied does not negate the legal reality that this element was a necessary part of the Receiver's claim, and therefore of Lois' appeal.    Because the classification of the United Financial funds that Lois received was an argument or claim in *Whitcraft I*, it falls within the scope of the Exception Clause.

- 15 -

This conclusion is supported by statements both of this court and of the Fifth Circuit, as well as the briefing of the parties in *Whitcraft I*. This court held in *AmeriFirst I* that, "at the time of the $431,161.00 transfer, Bruteyn had constructive possession of the money in United Financial's account." *AmeriFirst I*, 2008 WL 282275, at *10.

> Because Bruteyn was in constructive possession of the [United Financial] funds, including the sum of $431,161.00 at issue, the transfer of these funds clearly violated the terms of the court's Freeze Order. The Picasso sale contravened the Freeze Order on both sides of the sale because both the Picasso and the $431,161.00 were assets or monies subject to the Freeze Order.

*Id.* In Lois' brief on appeal, she stated that "[t]he Court's finding that [Bruteyn] was in constructive possession of the [United Financial] funds and, thus covered by the freeze is not disputed in this appeal." Lois 5th Cir. Br. 9; *see Whitcraft I*, 570 F.3d 268. Likewise, the Receiver argued in his brief that "[i]n reality, $431,161 of money that belonged in the receivership estate was transferred to [Lois] without any meaningful consideration." Rec'r 5th Cir. Br. 13-14; *see Whitcraft I*, 570 F.3d 268. The Fifth Circuit held that this court "did not err in finding that the funds held in United Financial's account which were used to purchase the Picasso were in the constructive possession of Bruteyn, thus providing an alternative theory for why the sale of the Picasso was a violation of the freeze order."

*Whitcraft I,* 570 F.3d at 273 n.5.   And it clarified that "[a]lthough [Lois] should not be held in civil contempt, [its] holding [did] not infringe upon the district court's authority to ensure the return of receivership assets through other means, including enforcement of the aforementioned receivership order." *Id.* at 273.

These holdings demonstrate that the classification of the United Financial funds as receivership assets——even if this element was not disputed——was an argument or claim presented in *Whitcraft I*, and therefore the Receiver's instant motion falls within the Exception Clause of the Settlement Agreement and its not precluded by that agreement.

B

Having determined that the Receiver's instant motion is not foreclosed by the Settlement Agreement, the court now turns to the merits of the motion.

The court holds that the Whitcraft Funds——other than that portion of the money paid on account of fines for late payment under *AmeriFirst I*——should be classified as receivership assets.[7]

_____

[7]The court declines the Receiver's request that the court classify as receivership assets the portion of the Whitcraft Funds attributable to fines for late payment under *AmeriFirst I*.  Because Lois was improperly subject to contempt sanctions, she is entitled to the return of any money paid as a result of such fines (even if she used receivership funds to pay the fines).  Although the parties have not requested such a division of the Whitcraft Funds in their briefing, the court finds that such a remedy is fair and is the most consistent with *Whitcraft I*.

- 17 -

By this holding, the court does no more than ensure compliance with the Orders.  As the court found in *Amerifirst I*, the United Financial money that was paid to Lois was a receivership asset prior to the transaction and therefore should have been turned over to the Receiver.

The court therefore exercises its inherent authority to authorize the Receiver to retain as part of the receivership estate the funds Lois paid in response to the court's contempt ruling, less the amount she paid in fines for late payment.  "A federal court has at its disposal an array of means to enforce its orders . . . .  [I]ts powers include those furnished by federal rule and by inherent authority . . . .  The details of these steps are committed to the discretion of the District Court[.]"  *Degen v. United States*, 517 U.S. 820, 827 (1996) (internal citations omitted).  "[T]he Court may act upon its inherent authority to preserve its ability to render an effective judgment, and it may exercise that authority to enjoin third parties from action threatening the viability of its Order."  *United States v. Texas*, 2005 WL 1868844, at *42 (E.D. Tex. Aug. 4, 2005).  A federal court has inherent authority to ensure that it orders are enforced and carried out.  "It is axiomatic that the court possesses the inherent authority to enforce its own orders."  *Greenfield Mills, Inc. v. Carter*, 2008 WL 4757323, at *1 n.1 (N.D. Ind. Oct. 29, 2008) (citing *Degen*, 517 U.S. at 827).

The court's decision essentially enforces the Receivership Order and the Freeze Order—which preserved the funds in United Financial's account as receivership assets—without finding that Lois acted contemptuously as an aider and abettor. That Lois surrendered the funds to the Receiver after the court held her in civil contempt (a ruling that was later overturned) does not alter the fact that these funds were from the inception of this litigation receivership assets. Although *Whitcraft I* makes clear that the court erred by holding Lois in civil contempt as an aider and abettor of Bruteyn, it does not interdict the court's authority to enforce its orders otherwise. Indeed, the Fifth Circuit explicitly contemplated that this court on remand could exercise its authority to ensure the return of receivership assets through other means, including enforcement of the Receivership Order. *See Whitcraft I,* 570 F.3d at 273 (stating that holding that Lois could not be held in civil contempt did not infringe on district court's authority to ensure return of receivership assets through other means, including enforcement of Receivership Order).

C

The court therefore grants the Receiver's motion in part, and denies it in part. The portion of the Whitcraft Funds attributable to Lois' return of the United Financial money from the Picasso transaction is hereby classified as a receivership asset, and the court authorizes the Receiver to retain these funds in his

- 19 -

possession and control.   The portion of the Whitcraft Funds that Lois paid under the late-payment fine provisions of *AmeriFirst I* is not a receivership asset and is ordered returned to Lois within 30 days of the date of this memorandum opinion and order.

### III

The court now turns to the Whitcrafts' application for attorney's fees.

### A

The Whitcrafts seek an award of attorney's fees incurred in defending the contempt proceedings against them.   They rely on the following four grounds: (1) the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412; (2) equity and "intuitive notions of fairness"; (3) opposing counsel's alleged liability for excessive costs; and (4) a violation of Fed. R. Civ. P. 11. Although the Whitcrafts rely on four different theories, each pivots on a similar showing: that the Receiver's motion for contempt sanctions was somehow groundless or in bad faith.   The Whitcrafts have failed to establish either.

### B

The EAJA provides that a court shall award attorney's fees to a prevailing party against the United States in a proceeding "unless the court finds that the position of the United States *was substantially justified* or that special circumstances make an award unjust."   28 U.S.C. § 2412(d)(1)(A) (emphasis added); *see also*

*Gisbrecht v. Barnhart*, 535 U.S. 789, 796 (2002).  The court will assume *arguendo* that the Receiver qualifies as the United States for purposes of the EAJA.[8]

The mere fact that a movant was successful in a proceeding against the United States does not mean that the government acted without substantial justification.  *See Nail v. Martinez*, 391 F.3d 678, 684 (5th Cir. 2004); *Griffon v. U.S. Dep't of Health & Human Servs.*, 832 F.2d 51, 52 (5th Cir. 1987) (per curiam).  Rather, "[t]he standard for determining whether the government's position is substantially justified is whether the position is 'justified to a degree that could satisfy a reasonable person.'"[9]  *Hernandez v. Barnhart*, 202 Fed. Appx. 681, 682 (5th Cir. 2006) (per curiam) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

---

[8]The Receiver maintains that, because he initiated the contempt proceeding and the SEC merely joined in support at a later time (and then only as to Bruteyn), the Whitcrafts did not prevail against "the United States" and cannot recover under the EAJA. Because the court is denying the Whitcrafts' application on other grounds, it will not consider this argument.  Moreover, the court is applying the reasoning regarding this first ground to the other three grounds, and the Receiver is a proper subject of at least one of the remaining grounds.

[9]Neither the Whitcrafts nor the Receiver has addressed which side bears the burden of demonstrating that an action was substantially justified.  The Fifth Circuit has stated that "[t]he United States has the burden to demonstrate that its position was substantially justified."  *Griffon*, 832 F.2d at 52.  Although the SEC did not respond to the Whitcrafts' application, the Receiver has responded and offered reasons why the contempt motion was substantially justified.  Based on the Receiver's arguments and the record as a whole, the court holds that the Receiver's positions as to Ronald and Lois were substantially justified and that an award of attorney's fees is not warranted.

The Whitcrafts present little argument regarding why the action of the SEC and the Receiver was not substantially justified, other than to reiterate their arguments in defense of the contempt sanctions and the holdings of this court and the Fifth Circuit. The Receiver argues that there must be a stronger showing than merely that the moving party prevailed in the underlying proceeding.

The court finds that the positions of the SEC and the Receiver in the contempt proceedings regarding Lois and Ronald were substantially justified, and it therefore denies the application for attorney's fees under the EAJA. Although Lois prevailed on appeal, the arguments and evidence that the SEC and the Receiver presented to this court were sufficient to obtain a finding of civil contempt and, consequently, were certainly "justified to a degree that could satisfy a reasonable person." *See Hernandez*, 202 Fed. Appx. at 682.

Regarding Ronald, although the court ruled in his favor and concluded that he could not be held in civil contempt, the claims against him were also justified to a degree that could satisfy a reasonable person. Concerning the first ground, the proof established that Ronald received actual notice of the Freeze Order before the sale of the Picasso, and he admitted helping Lois distribute the $431,161.00 after she received the wire transfer. The Receiver did not make the required showing under the demanding

clear and convincing evidence standard that Ronald violated the Freeze Order by aiding and abetting Bruteyn in the sale of the Picasso, but there was certainly evidence to justify the Receiver's position to a degree that could satisfy a reasonable person. Alternatively, given the plausibility of the Receiver's second ground, discussed next, the court holds that the Whitcrafts have failed to make the required showing for EAJA relief.

The second ground for holding Ronald in contempt——his refusal to transfer title and possession of the Lakewood House to the Receiver——required that the Receiver establish that the Lakewood House was a receivership asset. Although the Receiver did not make this showing, his position was justified to a degree that could satisfy a reasonable person. The Receiver maintained, first, that the Lakewood House was a receivership asset because it was purchased and improved solely with Hess Financial money, was therefore real property owned by Hess Financial, and Hess Financial was a relief defendant whose assets were to be delivered to the Receiver. The court ultimately found that the Receiver did not make the required showing that Hess Financial owned the Lakewood House. *See AmeriFirst I*, 2008 WL 282275, at *14. But in doing so, the court recounted in detail the evidence the Receiver adduced regarding the labyrinth of transactions that transpired between the time Bruteyn's former wife conveyed the Lakewood House to him as part of a divorce settlement and when Ronald took title; Hess

Financial's involvement in financing Ronald's purchase; and Hess Financial's extensive funding of improvements for the house. *See id.* Considering this evidence, the Receiver's position that the Lakewood House was a receivership asset because it was purchased and improved solely with Hess Financial money—although unsuccessful—was justified to a degree that could satisfy a reasonable person.

The Receiver attempted, second, to establish that the Lakewood House was a receivership asset on the basis that Hess Financial's financing and improving of the Lakewood House while Hess Financial was insolvent was fraudulent, and that, under TUFTA, the court should set aside the transfer of the Lakewood House to Ronald. The court rejected this ground for various reasons, including procedural ones. But when this argument is considered in tandem with the Receiver's first ground, the Receiver's failure through TUTFA to establish that the Lakewood House was a receivership asset certainly did not render his position unjustified to a degree that it could not satisfy a reasonable person. The Receiver made a colorable showing—albeit an insufficient one for contempt purposes—that the Lakewood House was a receivership asset because it was purchased and improved solely with Hess Financial money and therefore real property owned by Hess Financial. That the Receiver did not establish a basis in the contempt hearing to recover on one particular ground (i.e., under TUFTA) does not render him liable to

Ronald for attorney's fees under the EAJA.  One plausible ground is sufficient, at least in this context, to satisfy a reasonable person that the position is justified.

Accordingly, the Whitcrafts' EAJA-based claim fails.

C

The Whitcrafts' three remaining theories for why the court should award attorney's fees all fail for similar reasons.  They argue, first, that the court should exercise its inherent authority to award fees subject to "intuitive notions of fairness" and because the SEC and Receiver acted in bad faith by "vexatiously, wantonly and for oppressive reasons" bringing the motion for contempt.  Whitcrafts Br. 5-6.  They posit, second, that the SEC and Receiver unreasonably and vexatiously multiplied or prolonged the proceedings by seeking contempt sanctions against Ronald without adequate proof.  Third, Ronald requests an award of attorney's fees as a sanction against the SEC under Rule 11, contending that the SEC's claims were not in good faith supported by fact or law.

The court denies each of these claims for much the same reasons as discussed above in relation to the EAJA request.  The mere fact that both Whitcrafts were eventually successful in their defense against contempt sanctions does not mean that the motion was filed in bad faith, was intended to unnecessarily prolong the proceedings, or had no basis in fact or law.  Beyond simply

recycling the arguments that they raised in defense of contempt, the Whitcrafts have presented little or no evidence that the SEC and Receiver's actions justify the remedy that they seek.  Although the evidence the Receiver presented at the hearing was inadequate to warrant contempt sanctions against Lois and Ronald, it was sufficiently probative, for the reasons explained above, for the court to find that the Receiver's position was justified to a degree that could satisfy a reasonable person.  Accordingly, the Whitcrafts' application for an award of attorney's fees is denied.

*     *     *

For the foregoing reasons, the Receiver's September 30, 2009 partially unopposed motion to enforce Receivership Order or, alternatively, motion to retain funds is granted in part and denied in part.  The Whitcrafts' October 2, 2009 application for attorney's fees is denied.

**SO ORDERED.**

March 18, 2010.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE